

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

January 22, 1952

Hon. Robert S. Calvert        Opinion No. V-1389.
Comptroller of Public Accounts
Austin, Texas        Re: Applicability of the chain
                          store tax "exemption fee"
                          to businesses operating
                          for the purpose of parking
                          automobiles, parking lots,
                          garages, and radio sta-
                          tions which do not sell
                          goods, wares, or merchan-
Dear Mr. Calvert:           dise.

      Your letter requesting our opinion in reference to
the above captioned matter reads in part as follows:

      "Because of the following language: ' * * * or
any business operating for the purpose of parking
automobiles, parking lots, garages; or any radio sta-
tion'; contained in Subsection 5 (a) of Section 1, of
SECTION XVI, of House Bill No. 285, 52nd Legisla-
ture, Regular Session, this department has made
demand on both operators of parking lots and radio
stations for the exemption certificate required by
said act. It is now argued by a great many of the
operators of parking lots, as well as the operators
of certain broadcasting companies, that the law does
not apply to those parking lots where goods, wares
and merchandise are not sold nor to a radio station
where no commodities or articles are sold. There
are other reasons set out in the briefs of these op-
erators for the non-compliance with our demand. I
shall, therefore, thank you to advise this department
whether or not any business operating for the pur-
pose of parking automobiles, parking lots, garages;
or any radio station, are required to obtain the ex-
emption certificate provided for in the act regardless
of whether such place of business sells goods, wares,
or merchandise.

      "Is the payment to the parking lot operator for
the space occupied by the car a sale of goods, wares
and merchandise? There may also be a service ren-
dered by the operator in parking the car.

"Is the payment made to the operator of a radio station for a commercial advertisement a sale of goods, wares and merchandise?"

It will be necessary for us to answer your second and third questions before answering the first question submitted to us.

The phrase "goods, wares, and merchandise" is one of large signification, both at common law and under various statutes. It is of flexible meaning and is to be construed with reference to the subject matter and context in which it appears. 38 C. J.S. 944, Goods.

"'Goods, wares, and merchandise' means all movable property that is ordinarily bought and sold, . . ." 18 Words and Phrases (Perm. Ed. 1940) 543.

We have made an exhaustive research and have been unable to find a construction by the courts of the term "goods, wares, and merchandise" which embraces anything similar to automobile parking or advertising over a radio station. Even if the term were broad enough to embrace those privileges, we could not so construe "goods, wares, and merchandise" as used in the chain store tax act to include such privileges inasmuch as the term is used therein in connection with sales at stores and mercantile establishments.

You are therefore advised that the payment to the operator of a parking lot for the space to be occupied by an automobile is not a sale of goods, wares, or merchandise under the provisions of House Bill 285, Acts 52nd Leg., R.S. 1951, ch. 402, p. 695. Likewise, the payment made to the operator of a radio station for commercial advertisements does not constitute a sale of goods, wares, or merchandise under the act.

The first question submitted to us is whether or not any businesses operating for the purpose of parking automobiles, parking lots, garages, or any radio stations are required to obtain the exemption certificate provided for in paragraph 5(a) of subsection 1 of Section XVI of House Bill 285, supra, regardless of whether such places of business sell goods, wares, or merchandise.

The original chain store act (H.B. 18, Acts 44th Leg., 1st C.S. 1935, ch. 400, p. 1589, codified as Article 1111d, V.P.C.) is in twelve sections and in substance provides, so far as material to a decision of your first question, as follows:

Section 1 makes it unlawful for any person, agent, receiver, trustee, firm, corporation, association, or copartnership, either foreign or domestic, to operate, maintain, open, or establish any store or mercantile establishment in this State without first having obtained a license from the Comptroller of Public Accounts.

Section 2 provides that any person, etc., desiring to operate, maintain, open, or establish a store or mercantile establishment in this State shall apply to the Comptroller of Public Accounts for a license, accompanying each application with a filing fee of 50¢ for each store or mercantile establishment operated or to be operated, which filing fees are declared to be for the purpose of defraying the cost of the administration of the act. (This filing fee was raised to $1.00 for each store by House Bill 285, supra.)

Section 3 relates to the duty of the Comptroller to issue licenses and further provides that the licensee shall display the license in a conspicuous place in the store for which same is issued.

Section 4 provides for a renewal license for each calendar year.

Section 5 provides that the term "store, stores, mercantile establishment or mercantile establishments," wherever used in the act, shall not include certain designated occupations. (House Bill 285 amended Section 5 by including within the exemptions "any business operating for the purpose of parking automobiles, parking lots, garages; or any radio station.") This section also prescribes the annual license fees.

Section 7 defines the term "store" as used in the act "to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Act which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail or wholesale."

The Supreme Court of Texas in Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937), specifically held that the license fees and filing fees levied by the chain store act constituted an occupation tax levied for the privilege of operating, maintaining, and controlling stores as defined by the act. This case further held that the language contained in Section 5 which reads, "Provided that the terms, 'store, stores, mercantile establishment or

mercantile establishments,' wherever used in this Act, shall not include" certain enumerated businesses, although called exclusions were in fact intended as exemptions.

Based upon our answer to your second question, the businesses about which you ask clearly do not come within the affirmative operation of Article 1111d, V.P.C., and therefore no express exemption is required to relieve them from the burden of the tax, Hurt v. Cooper, supra. The exemption provisions of Article 1111d exclude from the provisions of the tax only those stores or mercantile establishments which ordinarily sell goods, wares and merchandise. The only exception to this is contained in the amendments added by House Bill 285 and which are the businesses made the subject of your inquiry.

House Bill 285 further amended Section 5 of Article 1111d, V.P.C., by adding subsection (c) which provides:

"All those establishments, except religious bookstores, exempted from the above schedule by this Act shall file an application as required by Sections 2 and 4 of this Act. If they meet the requirements of this Act for exemption, they shall pay an exemption fee of Four Dollars ($4) for one store and Nine Dollars ($9) for each additional store in excess of one."

You will note that subsection (c) above provides that the establishments exempted shall file application as required by Sections 2 and 4 of the act. Section 2 of the act reads in part as follows:

"(a) Any person, agent, receiver, trustee, firm, corporation, association or copartnership desiring to operate, maintain, open or establish a store or mercantile establishment in this State shall apply to the Comptroller of Public Accounts for a license so to do. . . ."

By the very language of Section 2 only those persons, etc., who desire to operate, maintain, open, or establish stores are required to make an application for a license or an application for an exemption from the payment of the license fee. It is, therefore, our opinion that the Legislature in the use of the following language which they added to Section 5 of Article 1111d: "or any business operating for the purpose of parking automobiles, parking lots, garages; or any radio station;" meant those businesses operating for the purpose of parking automobiles, parking lots, garages, and radio stations, which in connection with such businesses are conducting businesses in the meaning of the chain store

act by selling goods, wares, and merchandise.

It is an elementary rule of statutory construction that where a statute is open to two constructions, one of which would render it invalid or unconstitutional, the statute should be given the construction which would uphold it. This for the reason that in construing statutes we should seek the legislature intent, and it is presumed that the Legislature intended to enact a valid law.

It is our opinion that inasmuch as the chain store tax is an occupation tax levied for the privilege of selling goods, wares, or merchandise at a store or mercantile establishment, it would be unconstitutional, under said act, to levy an occupation tax against certain classes of business for the privilege of not selling goods, wares, or merchandise at a store or mercantile establishment as defined in the act. It would violate the "due course of law" provision of Article I, Section 19, of the Texas Constitution; the equal and uniform occupation tax provision of Article VIII, Section 2 of the Texas Constitution; the provision of Article I, Section 3 of the Constitution of Texas which guarantees equal rights and prohibits special privileges; and the "due process" and the "equal protection" clause of the Federal Constitution.

To construe this act in such a way that persons operating parking lots and radio stations at which no goods, wares, or merchandise are sold would have to pay an occupation tax for the privilege of not operating a store or stores, while exempting all other classes of business from paying an occupation tax for the privilege of not operating a store, would be an arbitrary discrimination.

The Supreme Court of the United States in Ohio Oil Co. v. Conway, 281 U.S. 146 (1930), in reference to the power of states to classify subjects of taxation, said:

"The applicable principles are familiar. The States have a wide discretion in the imposition of taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the national government or violating the guarantees of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to insure revenue and foster their local interests. The States, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that Amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate

to schemes of taxation. The State may tax real and personal property in a different manner. It may grant exemptions. The State is not limited to ad valorem taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products. In levying such taxes, the State is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure. [citing cases]

"With all this freedom of action, there is a point beyond which the State can not go without violating the equal protection clause. The State may classify broadly the subjects of taxation, but in doing so it must proceed upon a rational basis. The State is not at liberty to resort to a classification that is palpably arbitrary. The rule is generally stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Company v. Virginia, 253 U.S. 412, 415; . . . "

We can conceive of no basis for requiring operators of parking lots and radio stations, who do not sell goods, wares or merchandise, to obtain an exemption certificate in that they are not operating stores as defined by the act. This would likewise be true of other businesses which do not operate stores-- for instance, skating rink operators, operators of bowling alleys, collection agencies, lawyers, doctors, etc., who in the normal course of their business do not sell either goods, wares, or merchandise at stores or mercantile establishments.

You are therefore advised that the owners of parking lots for parking automobiles and the owners of garages and the owners of radio stations are not required to obtain an exemption certificate provided for in House Bill 285 unless at such places of business goods, wares, and merchandise are sold at either retail or wholesale.

## SUMMARY

The operator of a parking lot does not make a sale of goods, wares, or merchandise in charging a customer for the privilege of parking his automobile. The operator of a radio station does not make a sale of goods, wares, or merchandise by charging for commercial advertisements. The owners of parking lots for parking automobiles and the owners of garages and the owners of radio stations are not required to obtain an exemption certificate provided for in House Bill 285, Acts 52nd Leg., R.S. 1951, ch. 402, p. 695, unless at such places of business goods, wares or merchandise are sold at either retail or wholesale.

Yours very truly,

PRICE DANIEL
Attorney General

By W. V. Geppert
Assistant

APPROVED:

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

WVG/mwb